**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAVEN HURLEY, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>NAVY FEDERAL CREDIT UNION, )<br>EQUIFAX, INC, )<br>EXPERIAN INFORMATION SOLUTIONS, INC, )<br>and TRANSUNION INTERMEDIATE )<br>HOLDINGS, INC, )<br>)<br>Defendants. ) | Case No. 22 C 1545<br><br>Hon. Jorge L. Alonso |

## Memorandum Opinion and Order

On March 31, 2022, *pro se* Plaintiff Raven Hurley filed a complaint against Defendants Experian Information Solutions, Inc. ("Experian"), TransUnion Intermediate Holdings, Inc. ("Trans Union"), Navy Federal Credit Union ("NFCU"), and Equifax Information Services LLC, erroneously named Equifax, Inc. ("Equifax"). (ECF Nos. 1, 12.) Plaintiff claims that Defendants violated the "Federal Trade Commission Act ('FTC Act')[, 15 U.S.C. § 41 *et seq*.]; Truth in Lending Act ('TILA')[,] 15 U.S.C. § 1601 *et seq*., the Credit Repair Organization Act ('CROA')[,] 15 U.S.C. § 1679 *et seq*., the Fair Credit Reporting Act ('FCRA')[,] 15 U.S.C. § 1681 *et seq*., the Equal Credit Opportunity Act ('ECOA')[,] 15 U.S.C. § 1691 *et seq*., the Fair Debt Collection Practices Act ('FDCPA')[,] 15 U.S.C. § 1692 *et seq*., and Electronic Fund Transfers Act ('EFTA')[,] 15 U.S.C. § 1693 *et seq*." (Compl. ¶ 1.) Trans Union and NFCU move to dismiss the complaint.[1] Experian moves to join Trans Union's motion. For the reasons that

---
[1] On May 26, 2023, Plaintiff filed a notice of dismissal with prejudice with respect to Equifax pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (ECF No. 58.)

1

follow, the Court grants Trans Union's motion to dismiss (ECF No. 18), Experian's motion to join Trans Union's motion to dismiss (ECF No. 20), and NFCU's motion to dismiss (ECF No. 30).

## Background

The Court takes the following facts from the complaint, unless otherwise noted, which are accepted as true for motion to dismiss purposes. *See Lax v. Mayorkas*, 20 F. 4th 1178, 1181 (7th Cir. 2021).

### I. FDCPA Violations

Plaintiff's complaint is difficult to parse. Plaintiff claims that NFCU violated the FDCPA by "attempt[ing] to collect a debt that's in a positive balance" (Compl. ¶ 19), presumably with respect to two NFCU credit card accounts opened in October 2013 and March 2014 (*id.* ¶ 15). On December 29, 2020, Plaintiff received two notices from NFCU that she owed a debt on each credit card account. (*Id.*) Plaintiff notified NFCU that she disputed its claim, "demanded a cease and desist," and requested documentary evidence. (*Id.* ¶ 17.) On February 11, 2021, NFCU responded that it agreed to cease and desist, yet it then attempted to collect the debts "using co-defendants['] services." (*Id.* ¶ 18.) NFCU further failed to apply Plaintiff's payments on the multiple debts in accordance with her directions. (*Id.* ¶ 20.) Each "debt letter that NFCU sent" failed to include certain required disclosures. (*Id.* ¶ 21.)

### II. TILA Violations

Plaintiff alleges that NFCU calculates the Annual Percentage Rate ("APR") "by adding a margin to the U.S. [P]rime [R]ate published by the Wall Street Journal and the APR is adjusted monthly[,]" which is "inconsistent with TILA requirements pursuant to 15 U.S.C. § 1606(a)(2)."

(*Id.* ¶ 25.) Plaintiff further alleges that NFCU failed to include a required explanation on the right of rescission in its credit card agreement. (*Id.* ¶ 27.)

### III. FCRA Violations

Plaintiff claims that "[d]ue to non[-]compliance [with the] TILA, NFCU used co[-]Defendants . . . to evaluate the Plaintiff['s] credit history[,] which played a vital role in subjecting her into paying higher interests, rates, and other fees or charges[.]" (*Id.* ¶ 29.) As best the Court can infer, Plaintiff alleges that Trans Union, Experian, and Equifax each obtained and reported her credit transactions with NFCU without Plaintiff's permission. (*Id.* ¶ 30.) Plaintiff notified them and NFCU of her request pursuant to 15 U.S.C. § 1681b(2) to remove "prohibited information" (*id.*), but Defendants "are currently reporting information violating 15 U.S.C. § 1681c [a](4)[,] (5)" (*id.* ¶ 31) and continue to "furnish Plaintiff[']s consumer report [for] prohibited purposes as listed in section 1681b of title 15" (*id.* ¶ 32). Defendants "directly affect interstate commerce by inaccurately reporting credit information about the Plaintiff which continues to contribute to her emotional distress and financial instability." (*Id.* ¶ 33).

### IV. EFTA Violations

Plaintiff alleges that NFCU's credit card applications failed to contain certain required disclosures. (*Id.* ¶¶ 35–36, 38.)

### V. CROA Violations

Plaintiff alleges that each of the Defendants is a credit repair organization that made untrue or misleading statements about Plaintiff's credit standing to NFCU, among other things. (*Id.* ¶¶ 41–45.)

### VI. ECOA Violations

Plaintiff alleges that Defendants report "discriminating credit information related to

[Plaintiff's] application with NFCU" in violation of the ECOA. (*Id.* ¶ 46.)

### VII. FTC Act Violations

Plaintiff alleges that Defendants' violations of the TILA, CROA, FCRA, ECOA, FDCPA, and EFTA are "unfair or deceptive acts or practices in or affecting commerce" in violation of the FTC Act. (*Id.* ¶¶ 47–49.)

Plaintiff lists an "Index of Exhibits" at the end of her complaint, but she fails to attach any of those exhibits.

## Standard of Review

NFCU moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Trans Union does not state the Rule of Civil Procedure under which it brings its motion to dismiss, but most of its arguments also invoke Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

When considering a motion to dismiss, courts "accept the allegations in the complaint as true, and . . . draw all reasonable inferences in favor of the plaintiff." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021) (citation omitted). But

"allegations in the form of legal conclusions are insufficient" to survive a motion to dismiss, as are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (citations and internal quotation marks omitted). The Court construes Plaintiff's *pro se* complaint liberally and holds it to a less exacting standard than it would a formal pleading drafted by an attorney. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027–28 (7th Cir. 2013) (citing *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)).

## Analysis

### I. Trans Union's Motion to Dismiss

#### a. Article III Standing

As a threshold issue, Trans Union argues that Plaintiff fails to plead actual damages and therefore lacks Article III standing to bring this suit.

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo v. Robins*, 578 U.S. 330, 341 (2016). Trans Union contends that Plaintiff does not claim any credit denials or receipt of less favorable rates due to inaccurate reporting by Trans Union, but Plaintiff does allege that "NFCU used co[-]Defendants . . . to evaluate the Plaintiff['s] credit history[,] which played a vital role in subjecting her into paying higher interests, rates, and other fees or charges." Accordingly, Trans Union's argument that Plaintiff fails to allege concrete injury is unpersuasive.

Trans Union further argues that Plaintiff has not pled facts showing she is entitled to statutory or punitive damages because she fails to plead willful noncompliance with the FCRA. The Court need not reach this issue because it finds below that Plaintiff fails to state a claim for violation of the FCRA against Trans Union.

b.  FCRA

Plaintiff alleges that Trans Union reported information in violation of Section 1681c(a)(4) and (5). Trans Union argues that it cannot be liable under Section 1681c because Trans Union is only prohibited from reporting adverse credit information more than seven years old, and Plaintiff's alleged credit card delinquencies are only three years old.

The FCRA prohibits a consumer reporting agency ("CRA" or "consumer reporting agency"), like Trans Union, from making a consumer report that contains "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years" or more generally "any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(4), (5). The seven-year reporting period for accounts placed for collection or charged off begins "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." *Id*. § 1681c(c)(1).

Here, Plaintiff does not allege the date of the commencement of the delinquency. Plaintiff only alleges that she opened the two credit cards in October 2013 and March 2014, respectively, and that on December 29, 2020, Plaintiff received two notices from NFCU that she owed a debt on each credit card account. Plaintiff filed the instant lawsuit on March 24, 2022. Even construing the complaint liberally, the Court cannot reasonably infer from these allegations that the consumer reports of which Plaintiff complains reported "accounts placed for collection or charged to profit and loss" or other adverse information which antedate the report by more than

seven years. Plaintiff therefore fails to state a claim for relief under 15 U.S.C. § 1681c(a)(4) or (5).

Plaintiff also alleges that Trans Union violated 15 U.S.C. § 1681b by furnishing her consumer report without her permission and for "prohibited purposes." Trans Union argues that it cannot be liable under Section 1681b for reporting without Plaintiff's consent or instruction because Trans Union is permitted to furnish consumer reports to third parties without such consent under the FCRA. Trans Union also argues that Plaintiff fails to allege to whom the credit report was furnished, which Trans Union contends is required to state a FCRA claim.

Under Section 1681 of the FCRA, "Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies." *Cole v. U.S. Cap.*, 389 F.3d 719, 725 (7th Cir. 2004). "One means by which Congress effectuated this purpose was prohibiting the release of consumer credit reports unless the release occurs for one of the permissible purposes set forth in 15 U.S.C. § 1681b(a)." *Id*. "Many of the enumerated permissible purposes set forth in § 1681b are transactions initiated by the consumer; these purposes therefore do not create significant privacy concerns." *Id.*; *see also Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 721 (7th Cir. 2008) ("A company usually may access a consumer's credit information only if the consumer initiates the transaction.").

"The subsection does set forth, however, limited situations in which a consumer credit agency may furnish a consumer report even though the consumer has not initiated or authorized the release[,]" for example, "when a credit or insurance provider is extending the consumer a 'firm offer of credit.'" *Cole*, 389 F.3d at 725 (quoting § 1681b(c)(1)(B)(i)); *see also Zawacki v. Goal Fin., LLC*, 483 F. Supp. 2d 653, 656 (N.D. Ill. 2007) ("[A] party may obtain a consumer's credit report only with the written consent of the consumer or for certain 'permissible

7

purposes.'" (quoting *Cole*, 389 F.3d at 725)). Based on this law, the Court does not agree with Trans Union's over-generalized blanket statement that it is permitted to furnish consumer reports to third parties without consumer consent under the FCRA. And the complaint here does not implicate any of the permissible purposes for which a CRA may furnish a consumer report without consumer initiation or authorization.

But the Court nonetheless finds Plaintiff's claim deficient for the second reason raised by Trans Union—there are insufficient facts to give notice as to the basic nature of the credit report disclosure at issue. Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Twombly*, 550 U.S. at 555 (citation omitted); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008). When was the consumer report furnished and to whom? Plaintiff further alleges that her consumer report was furnished for "prohibited purposes"—what purposes? Plaintiff does not address these matters even vaguely and provides, at most, nothing more than a "'formulaic recitation" of some "elements of a cause of action[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff must "do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis original). She must "present a story that holds together." *Id*. at 404. This story does not hold together, and Plaintiff does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's FCRA claim against Trans Union is dismissed.

### c. CROA

Plaintiff alleges that Defendants violate 15 U.S.C. § 1679b(a)(1) by making untrue or misleading statements about her credit standing to NFCU. Under that statute, any "person" is prohibited from making any untrue or misleading statement to any other person who has extended credit to the consumer when that statement bears upon the consumer's credit worthiness, credit standing, or credit capacity. 15 U.S.C. § 1679b(a)(1)(B)(i).

Trans Union argues that it cannot be liable under the CROA because it is a consumer reporting agency, not a credit repair organization. The CROA defines a "credit repair organization" as "any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service . . . for the express or implied purpose of improving any consumer's credit record, credit history or credit rating." 15 U.S.C. § 1679a(3). That definition expressly excludes certain organizations, entities, or institutions. *Id*. § 1679a(3)(B). Contrary to Trans Union's implication, however, CRAs are not expressly excluded. *Id.*

Courts in this District are split as to whether an entity needs to be a credit repair organization to be subject to the prohibitions of the CROA. *Compare Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827, 840 (N.D. Ill. 2007) ("By using 'person' in that subsection and 'credit repair organization' in other subsections (such as the prohibition set out in 15 U.S.C. § 1679b(b)), Congress clearly expressed the intention that no entity could engage in the proscribed conduct whether or not that entity qualified as a credit repair organization."), *and Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 727–28 (N.D. Ill. 2005) ("[T]he Court finds that, to sustain a claim under the plain language of section 1679b of the CROA, Plaintiffs need not allege that Mauro Chevrolet is a 'credit repair organization.'"), *with Walston v.*

9

*Nationwide Credit, Inc.*, No. 18 C 7877, 2019 WL 4139002, at *4 (N.D. Ill. Aug. 30, 2019) (dismissing, *inter alia*, Section 1679b(a)(3–4) claim where entity was not a credit repair organization), *and White v. Fin. Credit Corp.*, No. 99 C 4023, 2001 WL 1665386, at *6 (N.D. Ill. Dec. 27, 2001) (same).

Even if the CROA is applicable to Trans Union, however, Plaintiff's allegation that Trans Union "violate[d] 15 U.S.C. § 1679b(a)(1) with untrue or misleading statements about the Plaintiff['s] credit standing to NFCU who has extended credit to the Plaintiff" is a bare legal conclusion devoid of any key facts regarding the alleged violation. What was the nature of the untrue or misleading statements? When were they made? Without more, there are insufficient facts to give notice as to the basic nature of the allegedly misleading statements at issue. Fed. R. Civ. P. 8(a); *Twombly*, 550 U.S. at 555; *Swanson*, 614 F.3d at 405.

For these reasons, Plaintiff fails to state a claim that Trans Union violated the CROA, and that claim is dismissed.

### d. ECOA

Trans Union argues that it cannot be liable under the ECOA because it is a consumer reporting agency, not a creditor. The ECOA states that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

> (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);
> (2) because all or part of the applicant's income derives from any public assistance program; or
> (3) because the applicant has in good faith exercised any right under this chapter.

15 U.S.C. § 1691(a). The ECOA defines a "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to

extend, renew or continue credit." 15 U.S.C. § 1691a(e). The Court agrees that Plaintiff fails to allege facts from which the Court could infer that Trans Union is a "creditor" under the ECOA.

The extent of Plaintiff's ECOA claim is the allegation that Defendants, including Trans Union, "violate[d] 15 U.S.C. § 1691a by reporting discriminating credit information related to the [Plaintiff's] application with NFCU." This is a bare legal conclusion devoid of key facts. "To state a claim under the ECOA, a plaintiff must plausibly allege that she was an applicant and was treated less favorably for one of the enumerated reasons." *Parker v. TransUnion LLC*, No. 22-CV-01731, 2023 WL 6290547, at *3 (N.D. Ill. Sept. 27, 2023) (citing *Walton v. First Merchs. Bank*, 772 Fed. Appx. 349, 350–51 (7th Cir. 2019)). What was the nature of the discrimination—namely, how was Plaintiff treated less favorably, and on what basis? *See Cruz v. Discover Fin. Servs. Inc.*, No. 22 CV 2956, 2023 WL 5530597, at *1 (N.D. Ill. Aug. 28, 2023) ("To survive the motion to dismiss, Cruz must plausibly allege that Discover treated him less favorably because of his membership in a statutorily-protected category."). When did each Defendant engage in an allegedly discriminatory act? Without more, Plaintiff fails to state a claim for discrimination under the ECOA. Fed. R. Civ. P. 8(a); *Twombly*, 550 U.S. at 555; *Swanson*, 614 F.3d at 405.

e. **FTC Act**

Plaintiff alleges that Trans Union violated the FTC Act by violating the TILA, CROA, FCRA, ECOA, FDCPA, and EFTA. Because Plaintiff fails to state a claim under any of those statutes, her derivative claim under the FTC Act against Trans Union fails as well.

II. **NFCU's Motion to Dismiss**

    a. FDCPA

NFCU argues that it is not a debt collector under the FDCPA and so the prohibitions and matter contained therein are inapplicable to the transaction between Plaintiff and NFCU. The Court agrees.

"To state a plausible FDCPA claim, a plaintiff must allege sufficiently that the defendant is a debt collector who sought to collect a consumer debt in a manner prohibited by the statute." *In re Murff*, No. 13 B 44431, 2015 WL 3690994, at *4 (Bankr. N.D. Ill. June 15, 2015). Under the FDCPA:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts *owed or due or asserted to be owed or due another* . . . [T]he term *includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts*.

15 U.S.C. § 1692a(6) (emphasis added). "Creditors who collect in their own name and whose principal business is not debt collection, therefore, are not subject to the Act." *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998); *see also Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017) ("[T]he Act defines debt collectors to include those who regularly seek to collect debts 'owed . . . another.' And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself. . . . All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'"); *Parker*, 2023 WL 6290547, at *3.

Here, Plaintiff alleges that she opened two NFCU credit cards and received two notices from NFCU that she owed a debt on each credit card account. She does not allege that NFCU

12

sought to collect debts owed to another. Accordingly, the complaint fails to allege that NFCU is a debt collector within the meaning of that term under the FDCPA.

Plaintiff nonetheless argues that NFCU could not possibly be in the collection of its own debt because it reported both credit card accounts as "charged-off," meaning NFCU is "treat[ing] (an account receivable) as a loss or expense because payment is unlikely[.]" *Charge Off*, Black's Law Dictionary (12th ed. 2024). But Plaintiff's logic is flawed: even if NFCU were not attempting to collect on Plaintiff's debt owed to it as Plaintiff contends, it does not follow that NFCU is therefore a debt collector. Nothing in the complaint suggests that NFCU's principal business is to collect the debts of another. Further, if, as Plaintiff argues, NFCU was not attempting to collect Plaintiff's debt, then she otherwise fails to allege a violation of the FDCPA. *See In re Murff*, 2015 WL 3690994, at *4 ("To state a plausible FDCPA claim, a plaintiff must allege sufficiently that the defendant is a debt collector *who sought to collect a consumer debt in a manner prohibited by the statute*." (emphasis added)).

For these reasons, Plaintiff fails to state a claim against NFCU under the FDCPA.

### b. TILA

Next, NFCU argues Plaintiff's allegations regarding alleged TILA violations are vague and conclusory and therefore do not meet the pleading and notice requirements of Rule 8 or otherwise state a cognizable claim under the TILA.

Plaintiff alleges that NFCU calculates the APR "by adding a margin to the U.S. [P]rime [R]ate published by the Wall Street Journal and the APR is adjusted monthly[,]" which is "inconsistent with TILA requirements pursuant to 15 U.S.C. § 1606(a)(2)." Section 1606(a)(2) of the TILA sets forth, in part, the definition of APR: "[T]he annual percentage rate applicable to any extension of consumer credit shall be determined, in accordance with the regulations of the

13

Bureau, . . . (2) in the case of any extension of credit under an open end credit plan, as the quotient (expressed as a percentage) of the total finance charge for the period to which it relates divided by the amount upon which the finance charge for that period is based, multiplied by the number of such periods in a year." 15 U.S.C. § 1606(a)(2). Even assuming Plaintiff's allegation of how NFCU calculates APR is true, it is not clear how that method is inconsistent with the TILA's definition of APR, which does not comprehensively set forth how APR must be determined. Further, the U.S. Prime Rate, "which can vary slightly from bank to bank, often dictates other interest rates for various personal and commercial loans." *Interest Rate—Prime Rate*, Black's Law Dictionary (12th ed. 2024).

Next Plaintiff alleges that NFCU fails to include an explanation on the right of rescission in its credit card agreements, as required by 15 U.S.C. § 1635. That section applies to disclosures required in credit transactions involving security interest in real property used as the principal dwelling of the consumer. *Id.* § 1635(a). Although Plaintiff cursorily alleges there is a security interest involved in her credit transactions, she does not allege that the credit transactions involved security interest in real property used as the residence of the consumer, and so fails to state a claim under 15 U.S.C. § 1635.

For these reasons, Plaintiff's TILA claim against NFCU is dismissed.

### c. FCRA

It is not clear whether Plaintiff attempts to assert a FCRA claim against NFCU. Because she alleges that "Defendants" violated the FCRA, the Court will consider whether she has stated such a claim against NFCU.

"The FCRA imposes certain requirements on consumer reporting agencies, such as Trans Union, and entities that furnish information to those agencies . . . ." *Westra v. Credit Control of*

14

*Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). "Most of the provisions of the FCRA are aimed at regulating the behavior of CRAs. Section 1681 s–2, however, regulates persons and entities that furnish information to CRAs." *Gulley v. Pierce & Assocs.*, No. 10 C 573, 2010 WL 5060257, at *4 (N.D. Ill. Dec. 6, 2010), *aff'd sub nom. Gulley v. Pierce & Assocs., P.C.*, 436 F. App'x 662 (7th Cir. 2011). As a threshold matter, Plaintiff argues that NFCU is a CRA under the FCRA. Pursuant to the FCRA,

> The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

But Plaintiff fails to allege facts that would support the reasonable inference that NFCU—a financial institution—"regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" for monetary fees. It is well-known that the three major nationwide CRAs are Equifax, Trans Union, and Experian. *See* Consumer Fin. Prot. Bureau, List of Consumer Reporting Companies (2024), https://files.consumerfinance.gov/f/documents/cfpb_consumer-reporting-companies-list_2024.pdf. Of course, other companies may conduct themselves as CRAs, but the complaint provides no basis for the Court to infer that NFCU was doing so here.

NFCU concedes that Plaintiff adequately alleges it is a furnisher under the FCRA—i.e., an entity that furnishes information to a CRA. It further argues that Plaintiff fails to allege NFCU received any notice from a CRA about Plaintiff's dispute, and such notice is a quintessential element to stating a claim against a furnisher under the FCRA. The Court agrees.

15

"Under the FCRA, after a furnisher . . . receives notice from a CRA that a consumer disputes the information provided by the furnisher to the CRA, the furnisher must conduct a reasonable investigation and report the results of that investigation back to the CRA." *Asufrin v. Roundpoint Mortg. Servicing Corp.*, No. 15 C 9077, 2016 WL 1056669, at *3 (N.D. Ill. Mar. 17, 2016) (citing 15 U.S.C. §§ 1681i(a)(2), 1681s–2(b)). "[T[he majority of other judges in this district who have addressed this issue have required plaintiffs to allege that defendants received the requisite notice from credit reporting agencies in order to survive the motion to dismiss stage." *Neiman v. Chase Bank, USA, N.A.*, No. 13 C 8944, 2014 WL 3705345, at *7 (N.D. Ill. July 25, 2014) (listing cases).

The Court has considered the non-precedential Seventh Circuit opinion in *Lang v. TCF Nat'l Bank*, 249 F. App'x 464 (7th Cir. 2007), in which the Seventh Circuit reversed a district court's dismissal of the plaintiff's Section 1681s–2(b) claim and held that the plaintiff was not required to allege that the credit reporting agency notified the defendant of the dispute. *Id*. at 466–67. The Seventh Circuit offered two reasons for its ruling. First, even after *Twombly*, complaints in federal courts need only satisfy a notice pleading standard. *Id*. at 466. Second, the plaintiff may not be in a practical position to allege that the CRA notified the defendant at the time of filing the complaint. *Id*. at 467.

In light of more recent case law, however, this Court does not find *Lang* persuasive. First, in a later unreported opinion, the Seventh Circuit affirmed the district court's grant of a motion to dismiss for failure to state a claim under Section 1681s–2(b) because the plaintiff failed to allege that the furnisher received notice from a credit reporting agency and so the requirements of Section 1681s–2(b) were never triggered. *Gulley*, 436 F. App'x at 665.

16

Second, in accordance with the Supreme Court's opinions in *Twombly* and *Iqbal,* complaints in federal courts must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). Without an allegation that credit reporting agencies notified NFCU, Plaintiff has not alleged sufficient facts that NFCU's statutory duties under § 1681s–2(b) have been triggered. *Neiman*, 2014 WL 3705345, at *7 (citing *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 929 (N.D. Ill. 2000)).

Third, Plaintiff "could easily ascertain without discovery whether [NFCU] received the requisite notice from credit reporting agencies." *Id.* (citing *Densmore v. Gen. Motors Acceptance Corp.*, No. 03 C 1866, 2003 WL 22220177, at *2 (N.D. Ill. Sept. 25, 2003)); *see also Densmore*, 2003 WL 22220177, at *2 ("[T]he FCRA expressly provides that a consumer is entitled to receive 'a description of the procedure used to determine the accuracy and completeness of the information . . . including the business name and address of any furnisher of information contacted in connection with such information.'" (quoting 15 U.S.C. § 1681i(a)(6)(A))). District court decisions "requiring an allegation of the requisite notice are correct that this 'key information' is 'easily verifiable.'" *Neiman*, 2014 WL 3705345, at *7 (quoting *Densmore*, 2003 WL 22220177, at *2); *see also Rideaux v. Travelers Ins. Co.*, No. 12 C 2592, 2013 WL 3354462, at *5 (N.D. Ill. July 1, 2013); *Pichugin v. Experian Info. Sols., Inc.*, No. 11 CV 04375, 2012 WL 527529, at *3 (N.D. Ill. Feb. 15, 2012); *Gulley*, 2010 WL 5060257, at *4.

For these reasons, Plaintiff fails to state a FCRA claim against NFCU and it is accordingly dismissed.

### d. EFTA

Next, NFCU argues that Plaintiff fails to allege facts showing an electronic transfer occurred, as required to state a claim under the EFTA. "Electronic Fund Transfers covered by the Act have three components: 1) a transfer of funds; 2) that is initiated by electronic means, and 3) debits or credits a consumer account." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1328 (7th Cir. 1997). Plaintiff fails to allege any transfer of funds, let alone one initiated by electronic means and that debits or credits a consumer account, and therefore fails to state a claim under the EFTA. Accordingly, Plaintiff's EFTA claim against NFCU is dismissed.

### e. CROA

It is not clear whether Plaintiff attempts to assert a CROA claim against NFCU. Because she alleges that "Defendants" violated the CROA, the Court will consider whether she has stated such a claim against NFCU.

NFCU argues that it cannot be liable under the CROA because it is not a credit repair organization. As stated above, courts in this District are split on this issue. *See supra*, Section I.c. The Court nonetheless otherwise finds Plaintiff's allegations against NFCU deficient for the same reasons set forth above with respect to Trans Union and similarly dismisses Plaintiff's CROA claim against NFCU. *See supra*, Section I.c.

### f. ECOA

NFCU argues that Plaintiff cannot maintain a claim against NFCU under the ECOA without any allegations that NFCU made a credit decision on discriminatory grounds. While NFCU (unlike Trans Union) is likely a "creditor" under the ECOA, for the same reasons otherwise set forth above with respect to Trans Union, Plaintiff does not allege any facts in

18

support of her discrimination claim against NFCU. *See supra*, Section I.d. Accordingly, Plaintiff's ECOA claim against NFCU is dismissed.

        g. **FTC Act**

Plaintiff alleges that NFCU violated the FTC Act by violating the TILA, CROA, FCRA, ECOA, FDCPA, and EFTA. Because Plaintiff fails to state a claim under any of those statutes, her derivative claim under the FTC Act against NFCU fails as well.

### III.    Leave to Amend

Although it is hard to see how Plaintiff could amend her complaint to state a claim under any of the consumer protection statutes invoked by her complaint, the complaint will not be dismissed with prejudice. "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). But "clear futility at the outset of a case [is] rare." *Id.* at 520. The better practice, then, "'is to allow at least one amendment regardless of how unpromising the initial pleading appears.'" *Id.* (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)); *see also In re Murff*, 2015 WL 3690994, at *5.

Plaintiff will accordingly be given the opportunity to file an amended complaint that adequately states a claim for relief. Should she choose not to amend within the given time, or should the amended complaint still not state a claim, the Court will dismiss the complaint with prejudice.

19

IV.    Conclusion

The Court grants Trans Union's motion to dismiss [18], Experian's motion to join Trans Union's motion to dismiss [20], and NFCU's motion to dismiss [30]. The complaint is dismissed with leave to amend within 28 days of the date of entry of this Opinion.

**SO ORDERED.**                                                        **ENTERED: November 18, 2024**

                                                                            **HON. JORGE ALONSO**
                                                                            **United States District Judge**